UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARTIN LOPEZ,<br>    Plaintiff,<br><br>v.<br><br>CENTURION HEALTH OF INDIANA, LLC<br>as the contracted health care provider for<br>the Indiana Department of Correction<br>**CASEY JACOBS-CAMPBELL, NP** in<br>her official and individual capacity, as a<br>Nurse Practitioner at the Wabash Valley<br>Correctional Facility,<br>**MIKAYLA WILLIS, RN** in<br>her official and individual capacity, as a<br>Registered Nurse at the Wabash Valley<br>Correctional Facility,<br>    Defendants. | Case No 2:24-cv-176-MPB-MG |

FILED
05/14/2024
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

**PLAINTIFF'S COMPLAINT FOR DAMAGES
AND REQUEST FOR JURY TRIAL**

Plaintiff's, acting *pro-se*, hereby complain against the above-identified defendants as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action brought by Martin Lopez, against Centurion Health of Indiana LLC, Nurse Practitioner Casey Jacobs-Campbell, and Registered Nurse Mikayla Willis for deliberate indifference to his serious medical needs that occurred at the Wabash Valley Correctional Facility, and Martin Lopez is seeking redress of the violations of his rights under the Eighth Amendment to the United States Constitution and under Indiana law.

1

## II. JURISDICTION AND VENUE

2.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331. This Court is authorized to issue declaratory relief pursuant to 28 U.S.C. §2201 and §2202 as well as Rule 57 of the Federal Rules of Civil Procedure. Damages are authorized pursuant to 28 U.S.C. §1343. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 because Defendant Centurion Health of Indiana, LLC, has an office in Marion County, Indiana, located at 550 N. Meridian St., Suite 100, Indianapolis, Indiana, 46204. Lopez's claims are brought pursuant to 42 U.S.C. §1983 to redress the damages he suffered as a result of the deprivation under the color of state law and rights secures by the United States Constitution. All obligatory administrative remedies related to the instant action have been exhausted as required by 42 U.S.C. §1997 e(a).

## III. PARTIES

3.  Plaintiff, Martin Lopez [herein after "Lopez"] is a resident of the state of Indiana and is currently confined to the Wabash Valley Correctional Facility 6908 S. Old U.S. Highway 41, Carlisle, Indiana 47838. Martin Lopez was confined at the Wabash Valley Correctional Facility [hereinafter "WVCF"] when the violations of his Eighth Amendment rights occurred, as stated below in the complaint.

4.  Defendant Centurion Health of Indiana LLC [herein after "Centurion"], at all times relevant to this action was the duly contracted Health Care Provider for the Indiana Department of Correction [hereinafter "IDOC"] and WVCF. Defendant Centurion is located at 550 N. Meridian St., Suite 100, Indianapolis Indiana, 46204, and is defined as a person under **42 U.S.C. § 1983**, liable for the violation of federally protected rights while acting under color of state law. Moreover, at all times relevant to this cause, Defendant Centurion was directly responsible for

the medical needs of Martin Lopez while he was incarcerated at WVCF, because they are the exclusive contract provider for medical services for all correctional facilities managed by IDOC. Centurion is registered in the State of Indiana and operates under color of state law. In addition, Defendant Centurion is also responsible for the acts and omissions of its employees taken in the scope of their employment. Further, at all times relative to this cause of action Defendant Centurion while acting individually, under color of state law deprived Martin Lopez of his federally protected rights.

5.    Defendant Casey Jacobs-Campbell, NP [herein after "Campbell"] at all times relevant to this action was a Nurse Practitioner at WVCF, located at 6908 S. Old US Hwy 41, Carlisle, Indiana, 47838, and performed duties as a Nurse Practitioner for Defendant Centurion at WVCF. She is licensed as a Nurse Practitioner in the State of Indiana, and was at all times relevant to this action employed by Defendant Centurion to provide medical care to inmates at WVCF. At all times relative to this action Defendant Campbell was acting under color of state law, within the scope of her authority and employment, and was an agent for Defendant Centurion, and an indirect agent for the IDOC. Further, at all times relative to this cause of action Campbell while acting individually, under color of state law deprived Martin Lopez of federally protected rights.

6.    Defendant Mikalya Willis, RN [herein after "Willis"] at all times relevant to this action was a Registered Nurse at WVCF, located at 6908 S. Old US Hwy 41, Carlisle, Indiana, 47838, and performed duties as a Registered Nurse for Defendant Centurion at WVCF. She is licensed as a Registered Nurse in the State of Indiana, and was at all times relevant to this action employed by Defendant Centurion to provide medical care to inmates at WVCF. At all times relative to this action Defendant Willis was acting under color of state law, within the scope of her authority and employment, and was an agent for Defendant Centurion, and an indirect agent

for the IDOC. Further, at all times relative to this cause of action Willis while acting individually, under color of state law deprived Martin Lopez of federally protected rights.

## IV. NATURE OF CLAIM

7. All of the Defendants individually and in their official capacity, acting singularly and in conspiracy, engaged in conduct toward achieving deprivation of Lopez's federally protected rights, under color of state law, and further violated the Indiana Constitution. This conduct was to deny Lopez the proper standard of care for his fractured ankle, ignore Lopez's complaint's of severe pain, and deny Lopez adequate and effective treatment [properly working walking boot or hard cast] and effective pain medication for his fractured ankle, allowing Lopez's to languish in pain and his ankle to heal improperly, leading to Lopez having to experience ongoing severe pain and having to have extensive surgery which included his ankle having to be rebroke in order to correct the damage the defective walking boot caused. All of these actions or inactions by the Defendants allowed Lopez to languish in severe pain.

8. Additionally, Defendant Centurion widespread custom, practice, and policy, whereby they minimize inmates complaints of symptoms and pain and delay treatment of inmates' broken or fractured bones and/or provide inadequate and/or ineffective treatment [used and defective walking boot] in an effort to save money, resulting in pain and injury to Lopez and others incarcerated at WVCF and other facilities throughout the IDOC. These widespread customs, practices, and policies, by Defendant Centurion represents a disregard, and total indifference of the federally protected rights of Lopez, and others incarcerated at WVCF, and other Indiana prisons, justifying an award of punitive damages in addition to any actual and compensatory damages that Lopez is entitled to recover.

## VIII.   STATEMENT OF FACTS TO CLAIM

9.   On September 18, 2023 Martin Lopez injured his ankle while playing soccer.

10.   Lopez immediately went from the soccer field to the medical building to seek help from medical staff.

11.   Lopez was seen by Registered Nurse Chantell D. Knepp who documented swelling and bruising to Lopez's right ankle and recorded a blood pressure of 156/89. Chantell D. Knepp gave Lopez a lay-in for three days along with a cane. A lay-in consist of no work and meals and medications brought to the inmate. No other instructions were given to Lopez.

12.   On September 18, 2023, Dr. Byrd ordered x-rays of Lopez's ankle.

13.   On September 19, 2023, Radiologist Ranjiu Kumar Saini, MP performed an x-ray of Lopez's right ankle.

14.   On September 19, 2023 Lopez was seen by Nurse Practitioner Campbell. Campbell had nursing staff apply a stir-up splint to Lopez's right leg below the knee. It appears from Lopez's medical records indicate that Campbell ordered him Acetaminophen 500mg but Lopez did not receive it until October 13, 2023. Campbell also exchanged Lopez's cane for crutches. Campbell noted that the x-ray done on Lopez's right ankle revealed an acute oblique fracture of distal right fibula. No other instructions were given to Lopez during the visit.

15.   On October 1, 2023, Lopez was ordered to give the crutches back and was placed in a walking boot. Medical records indicate Lopez was given his cane back due to instability. No instructions on the use of the walking boot or crutches was given to Lopez.

16.   The walking boot that Lopez was given did not function properly as it would not retain the air needed to adequately stabilize his ankle from further injury. Lopez advised medical staff verbally the next day that his walking boot was defective but was not given a new one.

17. On October 3, 2023, Lopez was seen by Nurse Practitioner Campbell wherein he complained to her of experiencing severe pain due to his ankle. Campbell prescribed Lopez Tramadol (Ultram) 50mg for a maximum of seven (7) days [every eight (8) hours as needed]. Subsequently, Lopez was told that he was only prescribed Tramadol two times daily, of which Lopez was not given four (4) of those doses. Campbell also renewed Lopez's Acetaminophen.

18. Additionally, during this same visit, Lopez advised Campbell that his walking boot was not holding air which was allowing his ankle and foot to move around causing him extreme pain. Campbell did not provide Lopez with a replacement walking boot. Lopez then asked Campbell if his injury was bad enough to warrant placement in a hard cast to which she stated "No." Campbell then told Lopez that she had checked on UpToDate.com on the proper treatment for distal fibular fractures and that it recommended the use of a walking boot instead of a hard cast. Campbell went on to tell Lopez that x-ray's of his ankle would be repeated in a week.

19. In Lopez's October 3, 2023, medical records Campbell falsified Lopez's medical records by documenting "PT was witnessed on multiple occasions to be walking on the affected extremity and only using one crutch." This is completely false.

20. On October 4, 2023, Dr. Byrd ordered an x-ray for Lopez's right ankle.

21. On October 7, 2023, Lopez submitted HCR# 601387, advising medical that he was told that his ordered x-ray was cancelled. Lopez also indicated that he was still in pain and requested that his pain medications be renewed. Nurse Willis responded: "Restrict activity; crutches-does not want, ok with cane. APAP 500mg."

22. On October 9, 2023, Lopez was seen by Nurse Willis. At this visit, Lopez complained of experiencing significant pain and that it was the last day of pain medication, and asked that his pain medication be renewed. Lopez also requested a replacement walking boot as the one he had

6

was defective due to it not holding air to properly stabilize his ankle. Nurse Willis ignored Lopez's request for a replacement walking boot and documented, "Pain continues to be major problem. Tenderness; pain w/ movement; weakness." Willis told Lopez that she had contacted the "physician" who in turn told her to have Lopez apply ice and heat to his ankle and keep it immobilized and that Lopez would not receive a refill on the Tramadol pain medication but would only receive Acetaminophen 500mg.

23. On October 24, 2023, an x-ray was done on Lopez's right ankle which demonstrated healing, oblique, non-displaced fracture in addition to no significant change in positional alignment since prior x-ray.

24. On October 24, 2023, Lopez submitted Health Care Request form [hereinafter "HCR"] #571022 requesting to be told results of x-ray.

25. On November 1, 2023, Lopez submitted HCR #506696, requesting to talk to a doctor about his ankle. Nurse Willis responded: "Continue wearing boot until further notice."

26. On November 12, 2023, Lopez submitted HCR #506469, again requesting to talk to a doctor about complications with his ankle. Lopez went on to advise medical that he didn't think that the nurse practitioner had his best interest in mind as she ignored him. Lopez also complained of experiencing severe pain when wearing the walking boot.

27. On November 21, 2023, an x-ray was ordered by Campbell.

28. The x-ray showed slightly decreased ossification of the foot and Redemonstration fracture of the distal fibula. Degenerative changes are noted throughout the foot.

29. On November 21, 2023, Lopez had a visit with Nurse Practitioner Campbell wherein he again complained of experiencing severe pain due to his ankle. Lopez advised Campbell that his

walking boot wasn't not functioning properly and wondered if that was what was causing him so much pain. Campbell ignored Lopez's complaints.

30. Instead Campbell told Lopez to exercise and wean himself off of the walking boot and to only use for it for long distances. Campbell would only prescribed Lopez the medication Meloxicam [an antinflammatory] for pain even though he advised her that he had already tried Aleeve [essentially the same thing as Meloxicam] and that it was ineffective.

31. On November 26, 2023, Lopez submitted HCR # 505915 wherein he complained of ear pain and loss of hearing. Kim Hobson responded: "NP wear boot provided." "Scheduled f/u December for fracture."

32. On December 10, 2023, Lopez filed Grievance # 23-165707 about his request to speak with a Nurse Practitioner or Doctor about complications with his ankle.

33. On December 10, 2023, Lopez submitted HCR # 571080 wherein he again requested to go over x-ray results with a Nurse Practitioner or doctor as he was not comfortable with the nurses as he believed that they had been ignoring his concerns. Nurse Willis responded: "Results reviewed; Start HEP; Cane returned. Walking boot for long distance only."

34. Sometime in the middle of December 2023 Lopez was called over to the medical building and was finally given a replacement walking boot for the defective one he had been forced to wear.

35. On December 14, 2023, Lopez was seen by Nurse Willis in response to HCR # 571080. Lopez advised Willis that something was still wrong with his ankle as it hurt badly and it felt like something was moving around or grinding inside. Willis stated that the most recent x-ray showed no fracture. Willis also stated that she talked to Nurse Practitioner Campbell who told her to

8

advise Lopez to start weaning out of the walking boot, wear regular shoes in house, and only wear the boot for long distances.

36. When Lopez asked if that was a good idea despite the severe pain he was in, the fact that he could feel something moving and/or grinding in his ankle, and the fact that he had just recently received a proper working boot that was stabilizing his ankle, to which Nurse Willis stated, "Yes its fine."

37. On December 22, 2023, Dr. Byrd ordered an x-ray of Lopez's right ankle which revealed "the ankle demonstrates normal bony ossification. The mortise is well-maintained. Acute fracture of the distal fibula. No evidence of osteomyelitis."

38. On December 22, 2023, Lopez was called to the medical building and was seen by Nurse Willis who advised Lopez that they had read his x-ray wrong and that his ankle was not healing properly. Willis also told Lopez that he needed to continue wearing the boot full time so his ankle could heal.

39. On December 22, 2023, Lopez filed grievance # 23-166696 requesting to see a specialist because he had only seen nurses who weren't diagnosing and treating his right ankle injury right.

40. On December 25, 2023, Lopez submitted HCR # 601402, wherein he complained that he was in lots of pain and requested to be seen by a specialist who dealt with his type of injury. An unknown person responded: "Scheduled with provider for f/u."

41. On December 27, 2023, Nurse Practitioner Campbell filled out a consultation request for Lopez, documenting, "OPR orthopedics consults for nonunion right distal fibula fracture."

42. On January 2, 2024, the consultation was approved.

43. On January 9, 2024, Lopez was seen by Nurse Practitioner Kayla Kellams [hereinafter "Kellams"]. Lopez complained to Kellams of experiencing severe and persistent pain in his ankle

9

and that the walking boot was rubbing his leg raw. Lopez also requested stronger pain medications. Kellams told Lopez that she would only give him Tylenol 500mg for breakthrough pain.

44. On January 17, 2024, while leaving for the off-site visit, Lopez's blood pressure was taken and read to be 156/84 due to the pain he was in. Lopez was taken to the Terre Haute Regional Hospital where two separate x-rays were done on his right ankle. Lopez did not talk to any medical staff while there.

45. On January 18, 2024, Nurse Practitioner Campbell filled out consultation for surgery, documenting, "malunion of the fibula with foreshortening of ankle into the values. X-ray. Referral nonunion with osteotomy osteoclast and ORIF right fibula."

46. On January 24, 2024, Lopez had an Ortho Consult at the Terre Haute Regional Hospital where his blood pressure was read to be 140/100 due to the pain he was in.

47. On February 7, 2024, Lopez submitted HCR # 571090, wherein he requested basic info about when he was having surgery and again complained of increasing pain.

48. On February 13, 2024, Lopez was given an NPO notification to no eat or drink after 12 a.m. for surgery.

49. On February 14, 2024, Lopez had surgery on his ankle at Terre Haute Regional Hospital by surgeon Kurt Madsen, D.O. When he returned, Lopez was given another lay-in until February 21, 2024 and prescribed Acetaminophen 300mg with codeine 30mg. Lopez was advised by the surgeon that he would be brought back in 6 to 8 weeks to remove the stitches and get a new cast.

50. On February 20, 2024, Lopez's lay-in was extended through March 17, 2024.

51. On February 21, 2024, Lopez submitted HCR # 571092 advising medical that his pain medications ran out and that he was still experiencing pain in his ankle and having trouble

sleeping because of it. Lopez requested that medical extend his pain medications. An unknown nurse responded: "As told in visit medical lay-in ext. until March 17. No renewal of T3's meds has current order Tylenol + IBU. No need for wheelchair on lay-in."

52. On February 23, 2024, Lopez was seen in nurse sick call by registered Nurse Elizabeth Bennett. The nurse never took his vitals and then falsely documented Lopez refused to have his vitals taken. Lopez complained to Bennett that he was in a lot of pain. Bennett told Lopez that she had talked to Nurse Practitioner Campbell who stated that there would be no renewal of pain medications.

53. On March 10, 2024, Lopez submitted HCR # 601400, wherein he requested to be sent to the specialist to have his stiches removed and a new cast put on. Lopez also advised medical that he was still experiencing severe pain and that he needed the pain medications that he was prescribed after surgery renewed because they were the only thing that eased his pain. Lopez specifically stated that Ibuprofen was not helping and that he could barely sleep at night due to the pain.

54. On March 11, 2024, Lopez returned to the specialist to have the stitches removed and a new cast applied. Lopez's blood pressure read 142/92 due to the amount of pain he was in from his ankle.

55. On March 12, 2024, Lopez submitted HCR # 571099, wherein he requested to have the staples /stitches removed from his ankle. Lopez also advised medical that he was supposed to get pain medications but had not received any yet. An unknown nurse responded: "Have empty IBU/Refill? May work for pain. Acetaminophen ordered."

56. On March 31, 2024, Lopez submitted HCR #571100, wherein he complained that his cast was falling apart and asking when it was supposed to come off.

11

57. On April 18, 2024 Lopez filed Grievance #24-176461, concerning his visit with Registered Nurse Kim Hobson on April 9, 2024 wherein he complained to her that his cast was falling apart and cutting into his skin so he needed a new one. Kim Hobson laughed at Lopez and told him not to worry about it. Lopez went on to advise Hobson that because of the pain it was causing him he could barely walk. Hobson ignored Lopez's complaint of pain and stated that she was retiring and couldn't wait because then she wouldn't have to put up with this stuff.

58. On April 21, 2024, Lopez submitted HCR #571000 again explaining that his cast was falling apart and cutting into his foot and leg, causing him a lot of pain. Lopez also advised medical that the "shoe" they gave him to help him walk was not helping as it was falling apart as well.

59. Lopez was told that he would be given a wheelchair or a medical manual scooter for patients with broken feet to move around with. He never received either one.

## IX. EXHAUSTION OF ADMINISTRATIVE REMEDIES

60. Martin Lopez exhausted the administrative remedies available to him through the grievance process as to all issues in this suit.

## X. LEGAL CLAIMS

61. Plaintiff's reiterates and incorporates by reference each and every allegation hereto fore set forth as a part hereto.

## CLAIM 1

## VIOLATION OF TITLE 42 U.S.C. § 1983
## CRUEL AND UNUSUAL PUNISHMENT

62. As a result of these Defendants actions and inactions in not providing appropriate or effective treatment and pain medication for Lopez's fractured ankle [and ignoring Lopez's complaints of severe pain even after being given Meloxicam and Acetaminophen] it caused Lopez's pain, suffering, and substantial harm, and means these Defendants were deliberately indifference to Lopez's serious medical needs and also means they violated Lopez's rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment. These Defendants actions / inactions [providing Lopez with inadequate support for his ankle and ineffective pain medication and ignoring his complaints of severe pain] caused Lopez prolonged pain and suffering, making these Defendants deliberately indifference to Lopez's serious medical needs in violation of Lopez's rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment of the Constitution of the United States.

DEFENDANT CAMPBELL

63. Defendant Campbell was deliberately indifferent to Lopez's serious medical needs by not providing Lopez with a proper cast and/or walking boot to ensure his ankle was properly stabilized, causing Lopez's injury to not properly heal and have to be rebroke and have extensive surgery done to repair the damage. Campbell also falsified Lopez's medical records in an attempt to make it appear that Lopez was not following orders on the care of his fractured ankle. This constitutes illegal punishment, intentional, wanton, and malicious conduct, and is indicative of this Defendants' total disregard of and deliberate indifference to the Constitutional Rights of

Lopez violating the Eighth Amendment Right of Lopez to be free from Cruel and Unusual Punishment.

64. Defendant Campbell was also deliberately indifferent to Lopez's serious medical needs by not providing Lopez with enough effective pain medication to last Lopez throughout the time his ankle was not properly stabilized [due to faulty walking boot], allowed it to heal improperly, which caused it to have to be rebroke and have extensive surgery done to correct the damage accrued due to the ankle not being properly stabilized to begin with, causing Lopez to endure severe pain and suffering throughout the entire ordeal. This constitutes illegal punishment, intentional, wanton, and malicious conduct, and is indicative of this Defendants' total disregard of and deliberate indifference to the Constitutional Rights of Lopez violating the Eighth Amendment Right of Lopez to be free from Cruel and Unusual Punishment.

DEFENDANT WILLIS

65. Defendant Willis was deliberately indifferent to Lopez's serious medical needs by not providing Lopez with a proper cast and/or walking boot to ensure his ankle was properly stabilized, causing Lopez's injury to not properly heal and have to be rebroke and have extensive surgery done to repair the damage. This constitutes illegal punishment, intentional, wanton, and malicious conduct, and is indicative of this Defendants' total disregard of and deliberate indifference to the Constitutional Rights of Lopez violating the Eighth Amendment Right of Lopez to be free from Cruel and Unusual Punishment.

66. Defendant Willis was also deliberately indifferent to Lopez's serious medical needs by not addressing the severe pain that Lopez was relaying to her, when she knew he had a faulty walking boot which was likely causing the severe pain he was experiencing. Because of this

faulty walking boot, Lopez's ankle was not properly stabilized which allowed it to heal improperly, which in turn caused it to have to be rebroke and have extensive surgery done to correct the damage accrued due to the ankle not being properly stabilized to begin with, causing Lopez to endure severe pain and suffering throughout the entire ordeal. This constitutes illegal punishment, intentional, wanton, and malicious conduct, and is indicative of this Defendants' total disregard of and deliberate indifference to the Constitutional Rights of Lopez violating the Eighth Amendment Right of Lopez to be free from Cruel and Unusual Punishment.

## CLAIM II

### *Monell* Claim

67.   Lopez reiterates and incorporates by reference each and every allegation heretofore set forth.

68.   Defendant Centurion has some sort of custom, practice, policy, and a pattern, whereby they don't send inmates with obvious fractures and/or broken bones to the emergency room or to a specialist which would provide an adequate support system [hard cast], in an effort to save Centurion money and work. Defendant Centurion's repeated choice, custom, practice, or policy to not send inmates to the emergency room or to a specialist to address an obvious fractured and/or broken bone shows that this Defendant is in violation of *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690-691 [1978].

69.   Accordingly, under *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690-691 [1978] Defendant Centurion, as the subcontractor for the Indiana Department of Correction [hereinafter "IDOC"] provides healthcare to prisoners at all IDOC facilities including Wabash Valley Correctional Facility [hereinafter "WVCF"], is liable in their capacity as the

official responsible for WVCF's medical care policies, and for violating Lopez's rights while he was incarcerated at that facility. Apparently, this custom, practice, or policy is well thought out by this Defendant and they have gotten away with it for years, with impunity.

70. Moreover, Defendant Centurion has some sort of custom, practice, policy, and a pattern where they don't employ staff that is trained in providing or applying a proper cast and/or walking boot. This provision of not having staff that is trained in providing or applying a proper cast and/or walking boot resulted in the deprivation of Lopez's and other inmates constitutional rights by allowing their injuries to not be properly stabilized which caused their bones to have to be rebroke. This is not the first time Defendant Centurion has allowed substandard medical care in regards to fractured and/or broken bones. Defendant Centurion's repeated choice, custom, practice, or policy to not employee staff that is trained in providing and/or applying proper casts and/or walking boots shows that this Defendant is in violation of *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690-691 [1978].

71. Moreover, Defendant Centurion has some sort of custom, practice, policy, and a pattern where they don't provide properly working medical devices [and instead reuse old devices] that would properly stabilize and treat an inmates fractured or broken bone. This provision of not providing medical devices in sound working order resulted in the deprivation of Lopez's and other inmates constitutional rights by allowing their injuries to not be properly stabilized which caused their bones to have to be rebroke. This is not the first time Defendant Centurion has allowed substandard medical care in regards to fractured and/or broken bones. Defendant Centurion's repeated choice, custom, practice, or policy to not employee staff that is trained in providing and/or applying proper casts and/or walking boots shows that this Defendant is in violation of *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690-691 [1978].

## CLAIM III

### EMOTIONAL DISTRESS

72. Lopez reiterates and incorporates by reference each and every allegation heretofore set forth.

73. As a result of all of the Defendants' egregious conduct resulting in needless pain / injury to Lopez, and these Defendants' violation of Lopez's right to adequate medical care for a serious medical need, Lopez, suffered [and continues to] severe pain, mental and psychological suffering, as well as emotional distress from their actions and/or inactions.

74. Lopez also lived in a constant state of fear because he in a maximum security prison setting and could not adequately defend himself due to the extent of his injury. Lopez should also be entitled to attorney fees in this matter [if appropriate] as well as punitive damages, for this emotional distress as a result of the Defendants' wanton and willful disregard for Lopez's, health and wellbeing.

### XI. PRAYER FOR RELIEF

*WHEREFORE*, the Plaintiff, Martin Lopez respectfully prays that this Court afford the following relief:

(a) Declare that the acts of denials of the Defendants described herein violated Lopez's rights under the Constitution and Laws of the United States, and under the Indiana Constitution

(b) Enter an order for injunctive relief with the goal of securing the health and reasonable medical needs of Lopez in the future while he is housed at the Wabash Valley Correctional Facility [or the Indiana Department of Correction] by ordering these Defendants [Campbell, Willis and Centurion] to maintain proper medical care for Lopez injured ankle.

(c) Enter an order awarding compensatory damages in favor of Lopez in the amount of $50,000 each, against Defendants' Centurion, and Nurse Practitioner Casey Jacobs-Campbell jointly and severally, to make Lopez whole, including the costs of this action and related fees, as allowed by law, against each defendant. And an additional award of damages in the amount of $50,000 total combined for each Defendant, Centurion, Nurse Practitioner Casey Jacobs-Campbell, and Registered Nurse Mikayla Willis, in punitive damages, special damages [including emotional

distress] and based on the *Monell* claim in this action to deter this conduct by the Defendants' in the future.

(d) Order a schedule to establish dates for the completion of discovery and other pre-trial procedures, including a date set for jury trial requested by Lopez.

(e) Enter an order granting Lopez's, Declaratory Judgment as to some of the claims in this action.

(f) Order any such additional relief as this Court may deem just and proper.

Respectfully submitted,

*Martin Lopez*
Martin Lopez, *pro se*

## VERIFICATION

I, Martin Lopez do hereby verify under the penalties of perjury, that the facts, dates, and contents of the foregoing *PLAINTIFF'S COMPLAINT UNDER 42 U.S.C. § 1983*, are authentic, true, and correct to the best of our knowledge, sworn this May 12th, 2024.

*Martin Lopez*
Martin Lopez, *pro se*
IDOC/WVCF
6908 S. Old US Hwy 41
Carlisle Indiana, 47838